## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
### WHEELING

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**

                                                     **CRIM. ACTION NO.: 5:19CR27-3 (BAILEY)**

**DOMINIC O. MCCALL,**

    **Defendant.**

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGE RECOMMENDING THAT DEFENDANT'S MOTION [139] TO SUPPRESS BE GRANTED

Currently pending before the undersigned on referral from the District Court is Defendant's Motion to Suppress [ECF No. 139], filed March 3, 2021.  The Government filed its response in opposition [ECF No. 144] on March 10, 2021.  On March 15, 2021, Defendant sought leave to file a reply brief, which request was granted.  Defendant's reply brief is filed at ECF No. 147-1.  An evidentiary hearing and oral argument were held on March 17, 2021.[1]  After considering the arguments of the parties as contained in the briefs and the evidence, proffers, and argument submitted during the hearing, the undersigned is prepared to issue a recommendation.

## I.
## FACTUAL/PROCEDURAL HISTORY

Defendant was indicted on June 18, 2019 for Conspiracy to Distribute and to Possess with Intent to Distribute Controlled Substances and three counts of Use of a Communication Facility to

---

[1] This hearing was originally set to take place on March 12, 2021.  The Government requested a continuance due to the unavailability of its witness.  ECF No. 145.  This request was granted.  ECF No. 146.

Facilitate a Drug Offense.  The indictment stems from a traffic stop that occurred on March 14, 2019.  On that date, Defendant was a passenger in a vehicle driven by Markos A. Wheeler, which was stopped at approximately 4:40pm on Route 2 Northbound in Marshall County, West Virginia, in the area of CertainTeed Gypsum for speeding and an inoperative brake light.[2]  ECF No. 139-1.  According to the Report of Traffic Stop [ECF No. 139-1], the subject vehicle was registered with the State of Ohio.  Sgt. Matthews approached the vehicle and positioned himself alongside the front passenger door where he detected a strong odor of green and burnt marijuana.  Sgt. Matthews also noted seeing numerous scraps from the removal of blunt wraps.  A driver's license check revealed that Mr. Wheeler's Ohio driver's license was suspended.  Mr. Wheeler also had an FBI number assigned to him as a result of various felony arrests.[3]  A license check for Defendant similarly revealed that his Ohio driver's license was suspended, and that an FBI number was assigned to him for various felony offenses, including drug trafficking.  ECF No. 139-1.

Upon questioning, Mr. Wheeler admitted that marijuana was located in the glove box of the vehicle.  Sgt. Matthews located and seized two individually packaged ½ to 1-gram bags of marijuana from the glove box.  At that time, Mr. Wheeler indicated that they were driving back to Columbus, Ohio where Mr. Wheeler had to go to work that night.  Mr. Wheeler further indicated that they were coming from Parkersburg.  ECF No. 139-1.

Sgt. Matthews asked Defendant if there were any other drugs, any cash, or any weapons in the vehicle.  Defendant indicated that he had in his possession a "large roll of U.S. currency ($3570.00)."  ECF No. 139-1.  Sgt. Matthews asked Defendant where he was coming from.  Defendant indicated he was coming from Parkersburg.  When asked about the cash, Defendant

---

[2] The Report of Traffic Stop [ECF No. 139-1] indicates that Sgt. Matthews paced the vehicle at approximately 61mph, but the report does not specify the speed limit in the vicinity of the stop.
[3] Sgt. Matthews does not specify the nature of these arrests.

stated it was for the purchase of a car.  ECF No. 139-1.  Two bags of "dirty smelly clothes" were in the rear compartment of the car (it is not clear if this refers to the trunk or the backseat passenger compartment).  Mr. Wheeler and Defendant indicated that these bags belonged to them.  Sgt. Matthews seized both Mr. Wheeler's and Defendant's phones and the cash, explaining that a search warrant would be obtained for the phones.  He also indicated that paperwork for the forfeiture of the cash would be filed.  ECF No. 139-1.

The Report of Traffic Stop notes that on Friday, March 15, 2019, a copy of the search warrant at issue was sent via certified U.S. mail to Defendant.  The Report further notes that, during a call with Defendant on March 28, 2019, Sgt. Matthews confirmed that Defendant received a copy of the warrant.  At that time, Defendant's phone was at the Pittsburgh Police Department in their electronic forensic department awaiting an update so that the phone could be forensically downloaded.  The phone was locked.  ECF No. 139-1.

A review of the search warrant at issue reveals that the warrant was obtained on March 15, 2019.[4]  Sgt. Matthews requested and the warrant provided authority to search for "[a]ny and all evidence of any crime" on the cell phone belonging to Defendant.  ECF No. 147-2.  Review of the warrant further reveals that, pursuant to W.Va. Code § 62-1A-4, the warrant could be "executed and returned only within 10 days after its date."  ECF No. 147-2, pg. 2.  The Extraction Report, which was the report generated from the search of Defendant's phone (and which is attached to Defendant's Reply at ECF No. 147-3) reveals that the search was conducted on or about April 22, 2019, or approximately 38 days after the warrant was obtained.

---

[4] The Government initially was unable to locate a copy of the search warrant at issue.  Consequently, the Government could not provide a copy of the warrant to either the Defendant or the Court until approximately March 11, 2021. Defendant appended the Affidavit and Complaint for Search Warrant to his Reply.  ECF No. 147-2.

No witness testimony was offered at the time of the March 17, 2021 hearing. By the Government's own admission, it subpoenaed Sgt. Matthews' attendance, but was unable to confirm the same with him. It is unclear why Sgt. Matthews did not appear for the March 17, 2021 hearing. The Government sought one continuance to accommodate Sgt. Matthews' medical treatment (this hearing was originally set for March 12, 2021) but did not seek to continue the hearing which occurred on March 17, 2021.

At the March 17, 2021 hearing, the Government, by and through its attorney, made proffers to the Court with respect to the traffic stop, the interactions between Sgt. Matthews and Defendant, Sgt. Matthews's procurement of the search warrant at issue, and its execution. The Government could not state definitively why the search warrant does not appear to have been executed until approximately April 22, 2019. The Government admitted that an extension of the warrant could have been sought but was not. No explanation was given for the failure to seek an extension of the warrant.

## II.
## ARGUMENTS OF THE PARTIES

### A. Defendant's Arguments[5]

Defendant does not contest the initial stop. Defendant also does not contest the validity of a limited search incident to the traffic stop. ECF No. 139, at p. 1. Defendant does, however, contest the validity of the seizure of his cell phone, and he argues that there was no probable cause

---

[5] Defendant's initial Motion contained arguments regarding the Government's inability to locate and provide a copy of the search warrant at issue. During the pendency of Defendant's initial Motion, however, the Government was able to locate and provide a copy of the search warrant. As a result, Defendant's arguments changed somewhat, as reflected in his reply brief. Because the arguments concerning failure to locate/provide a copy of the search warrant are no longer viable, the undersigned will not address those here.

to seize the same.  Defendant argues that, for this reason, the evidence obtained from the search of his cell phone should be suppressed.  Defendant further argues that evidence obtained from a search of his cell phone should be suppressed because (1) the search occurred after the warrant expired; (2) there was no probable cause to support the search warrant; (3) the search warrant was a general warrant, which is illegal under the Fourth Amendment; and (4) the *Leon* good faith exception does not apply here.

### B.  Government's Arguments

The Government contends that probable cause supported the initial seizure of Defendant's cell phone.  The Government further argues: (1) the delay in executing the search warrant was reasonable and the search satisfied Fed. R. Crim. Pro. 41(e)(2)(B); (2) probable cause supports the issuance of a search warrant; (3) the search warrant was not a general warrant and was therefore valid; and (4) officers relied in good faith on the warrant to search Defendant's cell phone.

### III.
### STANDARDS

The burden of proof for a Motion to Suppress is on the party seeking to suppress the evidence. *United States v. Gualtero*, 62 F.Supp.3d 479, 482 (E.D. Va. 2014) ("[t]he legal standards governing a motion to suppress are clear….[t]he burden of proof is on the party who seeks to suppress the evidence") (citing *United States v. Dickerson*, 655 F.2d 559, 561 (4th Cir. 1981)).  Once the defendant establishes a basis for his Motion, the burden shifts to the Government to prove by a preponderance of the evidence that the challenged evidence is admissible.  *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 177 n. 14 (1974) ("the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence")).

With these standards in mind, the undersigned will turn to the substance of the arguments raised in Defendant's Motion to Suppress.

## IV.
## DISCUSSION

### A. Probable Cause for Seizure of Cell Phone

"The Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *U.S. v. Jackson*, 131 F.3d 1105, 1108 (4th Cir. 1997), (citing U.S. Const. Amend. IV (internal quotations omitted)). Warrants are generally required before a valid search and/or seizure can be accomplished. *See Kentucky v. King*, 563 U.S. 452, 459 (2011).

"[T]he constitutional protection against an unreasonable search is distinct from the protection against an unreasonable seizure. A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Jackson*, 131 F.3d at 1108 (citing *Horton v. California*, 496 U.S. 128, 133 (1990) (internal citations and quotations omitted). The "plain-view" doctrine provides an exception to the warrant requirement for the seizure of property, provided that in viewing the article at issue, the viewing officer is lawfully in a place from which the object may be plainly viewed; the viewing officer has a lawful right of access to the object itself; and the object's incriminating character is immediately apparent. *Jackson*, 131 F.3d at 1109. An object's character is 'immediately apparent' if an officer, upon seeing it, has probable cause to believe it is evidence of a crime or is contraband. *Arizona v. Hicks*, 480 U.S. 321, 326-27 (1987).

Defendant maintains that the plain-view exception does not apply to this case. Specifically, Defendant argues that the incriminating character of the cell phone (and by implication, the

6

information therein) was not immediately apparent to Sgt. Matthews, as required by the case law.[6]

In response, the Government argues that Sgt. Matthews rightfully seized Defendant's cell phone

based on exigent circumstances.

The "exigent circumstances" doctrine provides another exception to the warrant

requirement. "Law enforcement officers may seize an item without a warrant if the officers have

probable cause to believe that the item contains contraband or evidence of a crime, and 'the

exigencies of the circumstances demand it.'" *United States v. Grinder*, 808 Fed.Appx. 145, 147

(4th Cir. 2020) (citing *United States v. Place*, 462 U.S. 696, 701 (1983)).  Here, the Government

argues that the circumstances demanded the seizure of the cell phone because, if the cell phone

was not seized and Defendant was permitted to drive away with it, evidence of criminal activity

could have been destroyed.

For both arguments, the legitimacy of the warrantless seizure of Defendant's cell phone

turns on whether there was probable cause to believe the cell phone contained or constituted

evidence of criminal activity, i.e. whether evidence of criminal activity was likely to have been

found on Defendant's cell phone.  Based upon the circumstances as they existed at the time of the

traffic stop, the undersigned would conclude that probable cause existed for Sgt. Matthews to

believe Defendant's cell phone contained or constituted evidence of criminal activity.

The vehicle in which Defendant was traveling at the time of the stop was registered with

the State of Ohio.  Neither Defendant nor the driver had valid driver's licenses.  Marijuana was

located in the vehicle, as were fragments of blunt wrappers.  Defendant had prior felony

convictions for, among other things, drug trafficking.  Defendant and Mr. Wheeler were far away

---

[6] Defendant is not challenging the first two prongs of the plain view doctrine.  Therefore, the undersigned will not address them here.

from their home (Columbus, OH) and had likely been so for a lengthy period of time, as demonstrated by the bags of dirty clothing in the rear of the car. Given the above, as well as the fact that Defendant was traveling with a large amount of cash,[7] it was reasonable for Sgt. Matthews to suspect that Defendant may have been engaging in drug trafficking activity. Because drug traffickers commonly communicate via cell phone, it was reasonable for Sgt. Matthews to believe that Defendant's cell phone contained or constituted evidence of criminal activity. *See United States v. Fisher*, RDB-14-413, 2015 WL 1862329, at * 2 (D. Md. Apr. 22, 2015). Therefore, probable cause existed for Sgt. Matthews to seize Defendant's cell phone.

Defendant argues that the marijuana in the vehicle was not his, and therefore, could not have justified the seizure of his cell phone. This contention is of no moment, however. "[P]robable cause exists to search a cell phone that [is] recovered from a car in which drugs [are] also found." *See Fisher*, 2015 WL 1862329, at * 2. *See also United States v. Herevia*, RDB-13-639, 2014 WL 4784321, at *8 (D. Md. Sept. 23, 2014). By implication, probable cause would also support the seizure of Defendant's cell phone.

For all of these reasons, the undersigned would conclude that the incriminating nature of Defendant's cell phone and/or the information thereon was immediately apparent to Sgt. Matthews at the time of this traffic stop. The undersigned would further conclude that exigent circumstances existed in that, if Sgt. Matthews had permitted Defendant to leave with the cell phone, evidence of criminal activity could have been destroyed if the phone was not seized. Accordingly, Sgt. Matthews's warrantless seizure of Defendant's cell phone did not violate the Fourth Amendment.

---

[7] $3750.00, and in varying and unusual denominations of bills: 4 - $100 bills; 20 - $50 bills; 99- $20 bills; 4 - $10 bills; 24 - $5 bills; and 30 - $1 bills.

## B. Probable Cause for Search of Cell Phone

Probable cause to search requires a reasonable belief that evidence of a crime will be found in the place to be searched. *See United States v. Blakeney*, 949 F.3d 851, 859 (4th Cir. 2020) ("[w]hether probable cause for a search exists is a practical, common-sense question, asking whether there is a fair probability that contraband or evidence of a crime will be found in a particular place") (internal citations and quotations omitted)). "Probable cause is not a high bar, and officers need not rule out a suspect's innocent explanation in order to obtain a warrant." *Blakeney*, 949 F.3d at 859 (internal citations and quotations omitted).

In this case, it was reasonable to conclude, based upon Defendant's suspended driver's license, the out of state plates of the vehicle in which Defendant was a passenger, the distance from his home of Columbus, OH, Defendant's prior conviction for felony drug trafficking, the marijuana in the vehicle, and the large amount of cash on Defendant's person, that evidence of drug trafficking could have and would have been located on his cell phone. Because each of these facts is set forth in the application for search warrant and in the search warrant itself, the undersigned would conclude that probable cause supported the search warrant at issue.

## C. Timeliness of Execution of Search Warrant

However, and notwithstanding that probable cause existed to conduct a search of Defendant's cell phone, the evidence obtained should be suppressed because (1) the warrant was not timely executed; (2) this failure resulted in an unreasonable deprivation of Defendant's property interest; (3) and the Government has not offered any explanation or evidence as to why this deprivation/delay occurred.

Included at the bottom of the search warrant is the following:

NOTE: W. Va. Code §62-1A-4 provides specifically that a warrant may be executed and returned only within 10 days after its date.

Indeed, West Virginia Code § 62-1A-4 provides in relevant part as follows: "The warrant may be executed and returned only within ten days after its date….The return shall be made promptly and shall be accompanied by a written inventory of any property taken."

In the instant case, the search warrant was obtained on March 15, 2019.  ECF No. 147-2. According to the Extraction Report generated after the search, the search was not conducted until on or about April 22, 2019 – or approximately 38 days after the search warrant was first obtained and approximately 28 days after it expired.  ECF No. 147-3.  The Government argues that 'steps were taken' to start the search and that the search was therefore in progress prior to the date of the Extraction Report.  Because of this, the Government argues, the execution of the warrant satisfies the requirements of Fed. R. Crim. Pro. 41(e)(2)(B).  The undersigned is not persuaded by this argument.

First, the warrant at issue was obtained from the State of West Virginia, specifically a Marshall County magistrate judge.  As such, West Virginia State Rules would apply to the application for and the execution of the warrant at issue.  The Government's argument regarding Fed. R. Crim Pro. 41 therefore is misplaced.

Notwithstanding the above and assuming that Federal Rule of Criminal Procedure Rule 41 would in fact apply to this case, the undersigned would nevertheless conclude that the Government's position on this issue is not tenable because the statute does not stand for the proposition that the Government seems to be advancing, i.e. that any steps taken toward searching the telephone satisfy the timing requirements of R. 41(e)(2)(B).

R. 41(e)(2)(B) provides in relevant part:

> A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information.  Unless otherwise specified, the warrant authorizes a later review of the media or

information consistent with the warrant.  The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review.

R. 41(e)(2)(A) provides that a search warrant obtained under this rule must be executed within 14 days.  This same time period applies to warrants obtained for electronically stored information, i.e. information contained on a cell phone.  That is, pursuant to R. 41(e)(2)(B), the on-site copying of media or information from a cell phone is governed by the 14-day time period set forth in R. 41(e)(2)(A).  Any subsequent, off-site review (presumably for relevancy) does not have to be done within the 14-day time frame.  That is not what occurred here.

In the instant case, the on-site copying of information does not appear to have taken place until approximately 38 days after the warrant was obtained, and 28 days after it expired according to the WV Code; or 24 days after expiration if guided by Fed. R. Crim. Pro. 41.  The Government contends that during this time, the Pittsburgh Police Department had the cell phone on their 'machine' in an attempt to break the cell phone's lock code.  However, when pressed on this assertion, the Government retreated somewhat from this statement.  Specifically, when the Court inquired whether it took approximately 30 days to overcome the lock feature on Defendant's phone, the Government stated that it could not commit to such an assertion.  The Government admitted that it did not know the exact timing of efforts to get the cell phone from West Virginia to the Pittsburgh Police Department, or when and for how long the cell phone was placed on the 'machine.'  A description of the nature and function of the 'machine' was not offered beyond noting that it unlocks otherwise locked cell phones.  Notably, no witness testified as to the exact timing and procedural mechanisms employed to execute the search warrant at issue.

After taking the above into account, the Court is left with the following: Defendant was deprived of his property interest in his cell phone and all of the information contained therein, and

was so deprived for almost 40 days; and the deprivation occurred without a valid warrant for 24-28 days.  By the time the search was conducted, the warrant was expired and had been expired for 24-28 days.  Though the Government tried to proffer an explanation for this delay, the Government was not wholly able to do so and there is no evidence upon which the Court could base a conclusion that the search was "in progress" within the requisite time period.  Even if it could have provided such evidence, the Government has cited no authority for the proposition that if a search warrant's execution is "in progress," this satisfies the execution timing requirements of either the West Virginia Code or the Federal Rules of Criminal Procedure.  When questioned, the Government admitted that an extension of the search warrant could have been obtained, but for unknown reasons was not.

Both State and Federal Courts have held that circumstances such as these violate the Fourth Amendment, and that suppression of evidence is justified.  *See State v. Pachesa*, 102 W.Va. 607 (1926) (holding suppression of evidence proper where search warrant was not executed until 50 days after warrant was obtained and no explanation for delay); and *United States v. Pratt*, 915 F.3d 266 (4th Cir. 2019) (holding suppression of evidence proper where Government held defendant's cell phone for 31 days without obtaining and executing a search warrant and offered no persuasive justification for the delay).  "A seizure that is lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests." *Pratt*, 915 F.3d at 271 (internal citations and quotations omitted).  "To determine if an extended seizure violates the Fourth Amendment, [the Court must] balance the government's interest in the seizure against the individual's possessory interest in the object seized." *Id.*

In *Pratt*, the Fourth Circuit noted that a "strong government interest can justify an extended seizure," and outlined various examples, including: preventing a suspect from entering a home for

two hours while officers obtained a warrant and detaining a package for 29 hours while seeking a warrant. *Id.* The seizure here amounted to almost 40 days.

The *Pratt* Court also noted that an individual can diminish his or her possessory interest in an object if that person voluntarily consents to the seizure or shares the seized object's contents. *Id.* There is no evidence that Defendant diminished his possessory interest in his cell phone.

Here, as in *Pratt,* given the dearth of evidence regarding the execution of the search warrant, and because there is no evidence that Defendant diminished his possessory interest in his cell phone, the manner of execution of the search warrant at issue unreasonably infringed on Defendant's possessory interests and violated Defendant's Fourth Amendment rights.

## D. Particularity of Search Warrant

Assuming that the delay in executing the search warrant was not unreasonable, the undersigned would nevertheless conclude that the warrant itself was invalid because it violated the particularity requirement of the Fourth Amendment.

"Unlike the probable cause requirement, which concerns the showing made by an officer seeking a search warrant, the particularity requirement is focused…on the officer executing [the] warrant, and ensures that the search will be carefully tailored to its justifications rather than becoming a wide ranging exploratory search of the kind the Framers intended to prohibit." *United States v. Cobb*, 970 F.3d 319, 326 (4th Cir. 2020)[8] (quoting *United States v. Blakeney*, 949 F.3d 851, 861 (4th Cir. 2020) (internal citations and quotations omitted)). The Fourth Amendment "does not set forth some general 'particularity requirement'." *United States v. Grubbs*, 547 U.S. 90, 97 (2006). So long as there is probable cause to believe that contraband or evidence of a crime will

---

[8] This case is currently on appeal with the United States Supreme Court. The ultimate disposition of this case is not determinative of the recommendation here.

be found in a particular location, the Fourth Amendment requires only two items be particularly

described in the search warrant: the place to be searched and the persons or items to be seized.  *Id.*

"[W]here a warrant does not otherwise describe the evidence to be seized, that gap can be

filled, at least sometimes, if the warrant instead specifies the relevant offense." *Cobb*, 970 F.3d at

328 (quoting *Blakeney*, 949 F.3d at 862-63, and *Unites States v. Dickerson*, 166 F.3d 667, 693-94

(4th Cir. 1999) (upholding a warrant authorizing officers to seize evidence of the crime of bank

robbery) (internal citations and quotations omitted), overruled on other grounds, *Dickerson v.*

*United States*, 530 U.S. 428 (2000)).  Importantly, in *Dickerson*, the search warrant described the

items to be seized as "[e]vidence of the crime of bank robbery." *Dickerson*, 166 F.3d at 693.

Likewise, the challenged language in *Cobb* is as follows: "[a]ny material associated with the

homicide of Paul Dean Wilson Jr. stored internally on a Gateway laptop computer serial #

NXY1UAA0032251C66F1601 dark gray in color belonging to or used by James Timothy Cobb.

Any and all evidence of any other crimes." *Cobb,* 970 F.3d at 324.  In both instances, the Fourth

Circuit found that these descriptions were sufficiently specific and upheld the validity of the search

warrant by virtue of their reference to the specific crime to which the suspected evidence related.

That is not what occurred here.

Here, the items to be seized were described as: "[a]ny and all evidence of any crime."  No

crime was specified either before or after this broad language.  Consequently, the search warrant

did not delineate boundaries around that which officers could rightfully seize from Defendant's

phone; rather, this phrase stood alone as the sole description of the items to be seized from

Defendant's cell phone.  Such a phrase, standing alone, "is overbroad." *Cobb*, 970 F.3d at 330.

In this way, the warrant did not "identify the items to be seized by reference to a suspected criminal

offense or by describing them in a manner that allows an executing officer to know precisely what

14

he has been authorized to search for and seize." *Cobb*, 970 F.3d at 329, quoting *Blakeney*, 949 F.3d at 863.

One could argue that, like the warrant in *Dickerson, supra*, the warrant in the instant case was sufficiently particular because it identified at the top of the search warrant the crime which officers suspected Defendant of committing, i.e. Possession with Intent to Deliver Controlled Substances. The undersigned is not persuaded by this argument, however. The portion of the warrant which describes the items to be seized, and which both seeks and provides permission for the search and seizure, does not limit those items to be seized to evidence of the crime of Possession with Intent to Deliver Controlled Substances. Rather, the items to be seized are described as "any and all evidence of any crime." In that way, the language at issue in the instant case differs from the language challenged in *Dickerson* and *Cobb*. The construct of the warrant itself and the broad language involved therein takes the authority bestowed by the warrant outside of the confines of the crime delineated at the top of the search warrant, i.e. Possession with Intent to Deliver Controlled Substances, and makes fair game everything on Defendant's phone that might be evidence of <u>any</u> crime. Such a broadly drawn search warrant is not reasonable under the Fourth Amendment.

### E. Good Faith Exception

The *Leon* good faith exception to the warrant requirement cannot save the search warrant in the instant matter. As the Supreme Court has noted, the question of whether evidence should be excluded is "an issue separate from the question [of] whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *United States v Leon*, 468 U.S. 897, 906 (1984). The exclusionary rule is neither "a personal constitutional right" nor is it "designed to redress the injury occasioned by an unconstitutional search". *Davis v. United States*,

15

564 U.S. 229, 236-37 (2011).  Rather, the exclusionary rule is a "prudential doctrine, created by [the Supreme Court] to compel respect for the constitutional guaranty" and to deter future Fourth Amendment violations by law enforcement.  *Id.* (internal citations and quotations omitted).

In the instant case, officers should have known simply by looking at the warrant that they could not have relied upon the same in good faith to search Defendant's cell phone and seize the information contained therein because the warrant clearly states at the bottom of the signature page that the warrant is to be executed and returned "only within 10 days."  There is no evidence in the record that the warrant was executed within this time frame.  The only evidence as to the date of execution comes from the Extraction Report, which demonstrates that the warrant was executed 38 days after the warrant was obtained.  Officers could not have relied in good faith upon a warrant that was expired by 28 days (or 24 days if relying upon Fed. R. Crim. Pro. 41).

Enforcement of the exclusionary rule is appropriate in this instance to compel respect for the constitutional guarantee of the Fourth Amendment.  Without enforcement, officers would be free to disregard the time limit set forth on the warrant itself, in the West Virginia Code (and, to the extent it is applicable, Fed. R. Crim. Pro. 41), and by implication, the Fourth Amendment; and, officers would be free to do so without explanation or evidence.  The exclusionary rule should be applied in this instance to deter future violations of the Fourth Amendment.

## V.
## CONCLUSION

Accordingly, and for all of the foregoing reasons, the undersigned would conclude that Defendant has met his burden of proving that the evidence in question should be suppressed.  The Government has not established by a preponderance of the evidence that the evidence in question is admissible.  Therefore, the undersigned **RECOMMENDS** that Defendant's Motion [139] to

Suppress be **GRANTED** and the evidence obtained pursuant to the search warrant at issue be **SUPPRESSED**.

Any party who appears *pro se* and any counsel of record, as applicable, may, within **fourteen (14) days** after being served with a copy of this Report and Recommendation file with the Clerk of the Court written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. A copy of such objections should be submitted to the District Court Judge of Record. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia, to the United States Marshals Service and to the United States Probation Office.

Dated: 3/26/2021

/s/ James P. Mazzone

JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE

17